IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEVEN R. GRABOFF,                          :
                                            :       CIVIL ACTION
                Plaintiff,                  :
                                            :       NO. 10-1710
        v.                                  :
                                            :
THE COLLERN FIRM, et al.,                   :
                                            :
                Defendants.                 :

## OPINION

**Slomsky, J.**                                     **November 5, 2010**

## I.      INTRODUCTION

Before the Court are Defendants The Colleran Firm and Francis T. Colleran's

(collectively "Colleran Defendants") Motion to Dismiss the Complaint Under Rule 12(b)(6) for

Failure to State a Claim (Doc. No. 11), and Defendants American Academy of Orthopaedic

Surgeons and American Association of Orthopaedic Surgeons' (collectively "AAOS

Defendants") Motion to Dismiss the Complaint Under Rule 12(b)(6) for Failure to State a Claim

(Doc. No. 14).

This case arises out of an agreement between Plaintiff Steven R. Graboff, an orthopaedic

surgeon, and Defendant The Colleran Firm.  Pursuant to the agreement, Plaintiff was hired as an

expert witness in a medical malpractice case, Jones v. Meller.  Defendant Francis T. Colleran,

served as counsel for the plaintiff in that case.  Plaintiff submitted a "draft report" to Francis

Colleran summarizing his "preliminary medical conclusions" in the Jones case. (Doc. No. 1 ¶

15.)  Colleran Defendants used this report in settlement negotiations in the Jones case, without

1

Plaintiff's knowledge or consent and without any indication that the report was only a preliminary one. (Id. ¶¶ 34-39.)

The preliminary report was brought to the attention of AAOS Defendants, who initiated proceedings against Plaintiff for violations of their Standards of Professionalism. (Id. ¶¶ 25-27.) After completing a review and appeal process, the Board of Directors of the AAOS voted to suspend Plaintiff for a period of two years. (Id. ¶ 70.) Notice of the suspension was published in an issue of *AAOS Now*, a publication of AAOS Defendants. (Id. ¶ 74.)

On April 16, 2010, Plaintiff commenced this action by filing a Complaint. (Doc. No. 1.) The Complaint contains eight counts. Counts I, II and III, brought against Colleran Defendants, allege breach of contract, negligence and breach of the duty of confidence and trust, respectively. Counts IV, V, VI, VII and VIII, brought against AAOS Defendants, allege breach of contract, tortious interference with contractual relations, commercial disparagement, defamation and false light invasion of privacy, respectively.

On May 19, 2010, Colleran Defendants filed the Motion to Dismiss. (Doc. No. 11.) Plaintiff filed a Response in Opposition on June 9, 2010. (Doc. No. 12.) On June 21, 2010, AAOS Defendants filed their Motion to Dismiss. (Doc. No. 14.) Plaintiff filed a Response in Opposition on July 12, 2010. (Doc. No. 17.) On July 19, 2010, AAOS Defendants filed a reply memorandum. (Doc. No. 19.)

On September 17, 2010, the Court held oral argument on both Motions. Following oral argument, the parties filed a Supplemental Brief in further support of their positions. (Doc. Nos. 21, 22, 23, 24.) For reasons that follow, the Court will deny Colleran Defendants' Motion to Dismiss (Doc. No. 11) and will deny AAOS Defendants' Motion to Dismiss (Doc. No. 14) in

their entirety.

## II.     FACTUAL BACKGROUND

The Colleran Firm retained Plaintiff as an expert witness in a medical malpractice case,

Jones v. Meller, filed in the Philadelphia Court of Common Pleas.  (Doc. No. 1 ¶ 12.)  On

December 5, 2007,[1] Plaintiff prepared and submitted what he maintains was a "draft report" (the

"Report") of his preliminary conclusions in the Jones case to Mr. Colleran.  (Id. ¶ 83.)  In the

report, Plaintiff concluded that Dr. Meller, defendant in the Jones case, was negligent.  (Id. ¶ 16.)

Plaintiff contends the report was clearly a draft, as indicated by the words "Draft Report" written

at the top of the first page.  He also maintains that he verbally instructed Mr. Colleran that the

report was not final and that "he would not finalize his report or testify at any deposition,

hearing, or trial until he had reviewed all of the medical records and radiologic studies."  (Id. ¶

17.)

Plaintiff alleges that Mr. Colleran used the Report without Plaintiff's final approval or

knowledge as part of settlement negotiations in the Jones case.  (Id. ¶ 36.)  He asserts that he first

learned that Mr. Colleran had used the report when he received a letter from AAOS Defendants.

(Id. ¶ 27.)  The letter notified him that Dr. Meller had filed a Grievance Report against Plaintiff,

alleging that Plaintiff had violated the AAOS Standards of Professionalism when he submitted

his Report in the Jones case.  (Id.)  On May 30, 2008, Plaintiff submitted a response to the

grievance, outlining the basis for his findings in regard to Dr. Meller's care.  (Id. ¶ 30.)  A

hearing was scheduled before the Committee on Professionalism (the "Committee") on Friday,

---

[1] Paragraph 15 of the Complaint states that Plaintiff submitted the draft report to Mr.
Colleran on December 7, 2007.  However, in the remainder of the Complaint, Plaintiff asserts he
submitted the report on December 5, 2007.

October 24, 2008.  (Id. ¶ 32.)  The parties were given until October 10, 2008 to submit materials in support of their position to the Committee.  (Id. ¶ 33.)

While preparing for the hearing, Plaintiff discovered that the copy of the Report submitted as part of Dr. Meller's grievance did not say "Draft Report" on the top.  (Id. ¶¶ 34-35.) On September 18, 2008, Plaintiff wrote a letter informing AAOS Defendants of this finding.  (Id. ¶ 36.)  On October 14, 2008, he had a telephone conference with Mr. Colleran.  (Id. ¶ 37.) During the conference, Mr. Colleran admitted he "whited out" the words "Draft Report" before sending the report to Dr. Meller's lawyer for settlement purposes.  (Id.)  On October 15, 2008, Mr. Colleran sent Plaintiff a letter confirming in writing that he altered the report by deleting the words "Draft Report."  He claimed in the letter that the words "Draft Report" were "irrelevant" to his decision to use the report in settlement negotiations and for this reason deleted them.  (Id. ¶¶ 38-39.)

On October 24, 2008, Plaintiff and Dr. Meller attended the grievance hearing without representation of counsel.  (Id. ¶ 40.)  At the hearing, the Committee did not consider the October 15th letter from Mr. Colleran because it was not submitted by the October 10, 2008 deadline. (Id. ¶¶ 45, 47.)  Plaintiff alleges the Committee's questions focused on "the substance of Dr. Graboff's report."  (Id. ¶ 43.)  He asserts that "[t]he Committee was more concerned with the fact that [he] opined that Dr. Meller was negligent, rather than whether [his] methodology for arriving at that preliminary conclusion comported with the Standards of Professionalism."  (Id.)

On December 23, 2008, the Committee released the Grievance Hearing Report.  (Id. ¶ 50.)  The Committee found Plaintiff guilty of all but two of the alleged violations.  (Id.)  The Committee recommended Plaintiff be suspended from membership in the AAOS for two years.

(Id. ¶ 56.)

On January 5, 2009, Plaintiff informed AAOS Defendants that he would appeal the decision of the Committee. (Id. ¶ 58.) On February 13, 2009, Plaintiff obtained another letter from Mr. Colleran, stating that he redacted the words "Draft Report" to give the appearance that the report was final for purposes of settlement. (Id. ¶ 60.) On February 28, 2009, the Judiciary Committee heard Plaintiff's appeal. (Id. ¶ 61.) Plaintiff was represented by counsel. (Id. ¶ 62.) The Judiciary Committee upheld the decision of the Committee to suspend Plaintiff. (Id. ¶ 67.)

On June 20, 2009, the Board of Directors voted to suspend Plaintiff from the AAOS. Plaintiff resigned on June 24, 2009. (Id. ¶¶ 68, 70.) Notice of his suspension was published in the September 2009 issue of *AAOS Now.* (Id. ¶ 74.) On October 29, 2009, Plaintiff received notice from Mednick Associates, LLC, a medical legal consulting firm, instructing him to stop working on any Colleran cases. (Id. ¶ 77.)

## III. DISCUSSION

### A. LEGAL STANDARD

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) has been the subject of recent examination, culminating with the Supreme Court's Opinion in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 1949; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Applying the principles of Iqbal, the Third Circuit in Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) set forth a two-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss.

See also Edwards v. A.H. Cornell & Son, Inc., 610 F.3d 217, 219 (3d Cir. 2010).

First, the factual and legal elements of a claim should be separated, meaning "a District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler, 578 F.3d at 210-11. Second, the Court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211. In other words, a complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Id. (citing Phillips v. County of Allegheny 515 F.3d 224, 234-35 (3d Cir. 2008)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'– 'that the pleader is entitled to relief.'" Iqbal, 129 S Ct. at 1950; Jones v. ABN Amro Mortg. Group, Inc., 606 F.3d 119, 123 (3d Cir. 2010). This "plausibility" determination under step two of the analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S Ct. at 1950.

## B.    CLAIMS AGAINTS COLLERAN DEFENDANTS

### 1.    Count I - Breach of Contract[2]

Plaintiff alleges that he entered into a contract with Colleran Defendants to serve as an expert medical witness in the Jones case. (Doc. No. 1 ¶ 81.) In Count I of the Complaint, he alleges that Colleran Defendants breached the duty of good faith and fair dealing implicit in this contract when Mr. Colleran "whited out" the words "Draft Report" on his report, and used it in settlement negotiations without his approval or knowledge. (Id. ¶¶ 86-87.) Plaintiff argues this

---

[2] Colleran Defendants argue that Pennsylvania law applies to all claims against them. (Doc. No. 11 at 6, 13-14.) Plaintiff does not dispute that Pennsylvania law applies. (Doc. No. 12 at 6-7.)

breach was the direct and proximate cause of his suspension from the AAOS, which lead to lost income and revenue for his expert services. (Id. ¶ 88.) Plaintiff claims damages in excess of $75,000. (Id.)

To state a claim for breach of contract under Pennsylvania law, Plaintiff must show: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003). "Pennsylvania law imposes a duty of good faith and fair dealing in every contract." Clark Motor Co. v. Mfrs. & Traders Trust, Co., No. 07-856, 2007 WL 2155528, at *5 (M.D. Pa. July 26, 2007). Good faith means "honesty in fact in the conduct or transaction concerned." S & C Rest. Corp. v. Sofia's Diner Rest., Inc., No. 98-5972, 1999 WL 627914, at *6 (E.D. Pa. Aug. 18, 1999) (citing Kaplan v. Cablevision of Pa., Inc., 671 A.2d 716, 722 (Pa. Super. Ct. 1996)). "However, the breach of the obligation to act in good faith cannot be precisely defined in all circumstances." Id.

Because facts and circumstances amounting to a breach of the duty of good faith and fair dealing cannot always be precisely defined, whether the conduct of a defendant constitutes a breach is frequently a question of fact. At the motion to dismiss stage, the Court will accept as true the facts as contained in the Complaint. If the Complaint contains facts that could amount to a breach of this duty, it will survive the Motion to Dismiss. Sofia's Diner Rest., 1999 WL 627914, at *6 ("Whether the Defendants' conduct in placing the advertisements at issue amounts to bad faith sufficient to constitute a breach of the implied duty of good faith and fair dealing is a question of fact. At this stage of the proceedings, therefore, Count V of the First Amended Complaint will withstand the Defendants' motion to dismiss.").

Colleran Defendants argue there was no breach of the duty of good faith and fair dealing because they did nothing to injure Plaintiff under the alleged contract. They submit that they paid Plaintiff, provided him with all the materials necessary to complete the report and did not interfere with his preparation of the report. Consequently, Colleran Defendants argue the contract was fulfilled in good faith. They dispute that Plaintiff ever mentioned that the report was not finalized. Further, they argue that Plaintiff cannot show foreseeable damages resulting from any alleged breach because his suspension from the AAOS was not a foreseeable result of a breach of the alleged contract.

Colleran Defendants' challenge to Count I amounts to a factual dispute regarding whether Plaintiff ever represented that the report was a draft and whether his suspension was a foreseeable consequence of a breach. This challenge is not a sufficient reason to grant a Motion to Dismiss, because, for the purpose of the Motion, the Court is required to accept Plaintiff's allegations as true. Phillips, 515 F.3d at 233 ("It remains an acceptable statement of the [12(b)(6)] standard, for example, that courts 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"). Accord Fowler, 578 F.3d at 210-11.

Plaintiff alleges that he told Mr. Colleran the report was not finalized, (Doc. No. 1 ¶¶ 17, 85) and that his suspension from the AAOS was a foreseeable consequence of Colleran Defendants' breach. (Doc. No. 1 ¶¶ 78, 88.) These allegations are accepted as true for the purpose of the present Motion. The facts in the Complaint allege the existence of a contract, a breach and resulting damages. Plaintiff has stated a claim for breach of contract and the Motion

to Dismiss Count I will be denied.

### 2. Counts II & III - Negligence and Breach of the Duty of Confidence and Trust

#### a. Count II - The Negligence Claim

In Count II of the Complaint, Plaintiff asserts that Colleran Defendants had a duty to ensure he had all materials necessary to reach an expert medical conclusion in the <u>Jones</u> case, a duty to use the Report responsibly and in a manner consistent with the ethical obligations of a lawyer, and a duty to use the Report as agreed upon by Plaintiff and Colleran Defendants. (Doc. No. 1 ¶¶ 91-93.) Plaintiff further alleges that Mr. Colleran breached those duties by "whiting out" the words "Draft Report" on the Report and using it in settlement negotiations without Plaintiff's knowledge or approval. (<u>Id.</u> ¶ 94.) Plaintiff contends this breach caused his suspension from the AAOS and resulted in damages in excess of $75,000 for lost income and revenue from his expert services. (<u>Id.</u> ¶ 95.)

Colleran Defendants argue Plaintiff is precluded under Pennsylvania's "gist of the action" doctrine from bringing a tort claim based on the same set of facts used to prove a breach of contract claim. Pursuant to this doctrine, if the gist of the action is contractual, meaning that the obligations of the parties are defined by the terms of a contract and not by the larger social policy embodied in the law of torts, a plaintiff cannot bring a tort claim against a defendant in the same action. <u>Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.</u>, 247 F.3d 79, 104 (3d Cir. 2001)). Colleran Defendants argue the negligence claim arises out of the alleged contractual relationship with Plaintiff, not out of any social policy. Consequently, they maintain the negligence claim should be dismissed.

Plaintiff responds that the gist of the action doctrine precludes a contract claim and a tort claim arising out of the same action only when the duty arises *solely* from a contractual relationship. (Doc. No. 12 at 12.) Here, he argues that the duty does not arise solely from a contractual relationship between the parties. Plaintiff alleges that misappropriating another's work is tortious conduct, standing apart from any contractual relationship. He maintains that the negligence claim may be asserted in addition to the contract claim.

### b.   Count III - Breach of the Duty of Confidence and Trust

Colleran Defendants claim the gist of the action doctrine should also preclude the claim for breach of the duty of confidence and trust asserted in Count III. In this Count, Plaintiff claims a confidential relationship existed between himself and Colleran Defendants. (Doc. No. 1 ¶ 97.) Because of this confidential relationship, Plaintiff alleges the Report should have been kept confidential by Colleran Defendants until a final report was submitted. (Id. ¶¶ 98-99.) Plaintiff argues Colleran Defendants breached this duty by "whiting out" the words "Draft Report" and using the Report in settlement negotiations without Plaintiff's knowledge or approval. (Id. ¶ 101.)

Colleran Defendants argue this tort claim should be dismissed for the same reason the negligence claim in Count II should be dismissed, that is, under the "gist of the action" doctrine. In response, Plaintiff offers the same justification for this claim as he asserts in regard to the negligence claim.

### c.   "Gist of the Action" Doctrine

The gist of the action doctrine has never been expressly adopted by the Pennsylvania Supreme Court. <u>Air Prods. & Chem., Inc. v. Eaton Metal Prods. Co.</u>, 256 F. Supp. 2d 329, 340

(E.D. Pa. 2002).  However, the Pennsylvania Superior Court and a number of U.S. District

Courts have predicted that the Pennsylvania Supreme Court would adopt the doctrine as the law

of this Commonwealth.  Id.; see also Etoll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa.

Super. Ct. 2002); Asbury Auto. Group L.L.C. v. Chrysler Ins. Co., No. 01-3319, 2002 WL

15925, at *3 n.3 (E.D. Pa. Jan. 7, 2002).

The purpose of the doctrine is to preserve the distinction between a breach of contract and

a tort.  Eaton Metal, 256 F. Supp. 2d at 340.  "The important difference between contract and tort

actions is that the latter lie from breach of duties imposed as a matter of social policy while the

former lie for the breach of duties imposed by mutual consensus."  Etoll, Inc, 811 A.2d at 14

(quoting Redevelopment Auth. v. Int'l Ins. Co., 685 A.2d 581, 590 (Pa. Super. Ct. 1996) (*en

banc*)).  The doctrine therefore "precludes a plaintiff from recasting ordinary breach of contract

claims into tort claims."  Eaton Metal, 256 F. Supp. 2d at 340.  "[I]t is possible that a breach of

contract also gives rise to an actionable tort.  To be construed as in tort, however, the wrong

ascribed to defendant must be the gist of the action, the contract being collateral."  Etoll, Inc, 811

A.2d at 14 (quoting Bash v. Bell Tel. Co. of Pa., 601 A. 2d 825, 829 (Pa. Super. Ct. 1992)).

Here, Plaintiff asserts both breach of contract and torts.  He is permitted to do so if the

wrong is the gist of the action, with the contract being merely collateral.  Plaintiff's claims derive

from Mr. Colleran "whiting out" the words "Draft Report" and using the report in settlement

negotiations without his knowledge or approval.  This wrong is the "gist" of the present action

and the contract claim would be collateral to it.  In any event, Colleran Defendants do not admit

there was a contract  (Doc. No. 11 at 6 n.2) and Plaintiff asserts that the tortious conduct would

exist in the absence of a contract.  Therefore, at this stage, giving Plaintiff the benefit of all

inferences in his favor, the contract appears to be merely collateral.  Consequently, Counts II and III are not barred by the gist of the action doctrine and withstand the Motion to Dismiss.

### 3.    The Punitive Damage Claim In Counts II and III

Plaintiff requests punitive damages in Counts II and III.  (Doc. No. ¶¶ 95, 102.)  Colleran Defendants argue that, should the Court permit Counts II and III to stand, the Court should dismiss the claim for punitive damages on Counts II and III because the Complaint fails to allege Colleran Defendants' actions were malicious, willful or oppressive.  Plaintiff responds by arguing that factual allegations underlying the Complaint are sufficient to make a claim of malicious conduct because the facts show that Mr. Colleran acted with "reckless disregard" of Plaintiff's rights.

Pennsylvania law permits a punitive damage award where a defendant's conduct is intentional or malicious.  See Vance v. 46 & 2, Inc., 920 A.2d 202, 206 (Pa. Super. Ct. 2007).  Here, Plaintiff has pled facts which, if true, may establish a right to punitive damages.  Plaintiff alleges that Mr. Colleran "made the decision to white out the word 'DRAFT' which [Plaintiff] had purposefully placed in his report."  (Doc. No. 1 ¶ 60.)  In doing so, Plaintiff has alleged that Mr. Colleran acted intentionally.  While the inclusion of the allegation— that Defendant acted "intentionally" or "maliciously"— without supporting facts, would defeat Plaintiff's claim on a motion to dismiss under Iqbal, the inclusion of facts supporting the conclusion of intentional or malicious conduct, without the conclusory statement itself, is sufficient to withstand a motion to dismiss.

### B. GRABOFF v. AAOS DEFENDANTS

#### 1. Preliminary Issues

##### a. Choice of Law

AAOS Defendants argue that Illinois law applies to the claims against them, because such claims arise out of Plaintiff's membership in the AAOS and the Bylaws of the organization provide that membership status is governed by Illinois law. Plaintiff argues that it is too early in the proceedings to determine which state law governs here. He argues that the Court lacks appropriate facts to determine which state law applies because, at this stage in the proceedings, the parties have not yet developed the facts necessary to allow the Court to assess the underlying policy and interests raised in the pleadings. Plaintiff argues that without facts necessary to assess the underlying policy and interests, the Court cannot determine which law should apply under Pennsylvania choice of law analysis.

"A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state." Echols v. Pelullo, 377 F.3d 272, 275 (3d Cir. 2004) (citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 497 (1941)). Accordingly, Pennsylvania choice of law rules will govern the Court's choice of law analysis. Pennsylvania courts apply a policy/interests approach to choice of law issues. O'Loughlin v. Hunger, No. 07-1860, 2009 WL 1084198, at * 2 (E.D. Pa. Apr. 21, 2009) (quoting Griffith v. United Air Lines, Inc., 203 A.2d 796, 805 (Pa. 1964)) ("Pennsylvania adopts a 'flexible rule which permits analysis of the policies and interests underlying the particular issue before the court.'"). A choice of law analysis under Pennsylvania law involves three steps.

"First, the court must determine whether a real conflict exists."[3]  Id.  Second, if a real conflict exists, the court "examines the governmental policies underlying each law in order to classify the conflict as 'true,' 'false' or an 'unprovided-for' situation.  A false conflict occurs where only one state's interests would be impaired, necessitating the application of the interested state's law."  Id. (quotation and citation omitted).  A true conflict exists "[w]here . . . each jurisdiction has a governmental policy or interest that would be impaired by the application of the other state's law."  Id.  "In the case of a true conflict, the court turns to the third step to 'determine which state has the greater interest in the application of its law.'"  Id. (quoting Hammersmith v. TIG Ins. Co., 480 F.3d 220, 231 (3d Cir. 2007)).

As the foregoing makes clear, conducting a Pennsylvania choice of law analysis is fact-intensive and context specific.  Due to the complexity of this analysis, when confronted with a choice of law issue at the motion to dismiss stage, courts within the Third Circuit have concluded that it is more appropriate to address the issue at a later stage in the proceedings.  See, e.g., Hayes v. American Intern. Group, No. 09-2874, 2009 WL 4591531, at *3 (E.D. Pa. Nov. 30, 2009).  Here, a choice of law analysis is premature because the record lacks necessary facts for the Court to conduct the fact-intensive, context-specific analysis required by Pennsylvania law. Therefore, the Complaint will survive AAOS Defendants' Motion to Dismiss if Plaintiff states a claim sufficient under either Pennsylvania or Illinois law.

### b.    The Internal Affairs Doctrine

AAOS Defendants argue that the Court should dismiss the Complaint under the internal

---

[3] A real conflict exists only when states would treat the issue differently.  If the difference between the law of the states lacks substance, then there is no true conflict and a choice of law analysis is unnecessary.  O'Loughlin, 2009 WL 1084198, at * 2.

affairs doctrine. They assert that under Illinois law, courts generally do not interfere with internal affairs of a private, voluntary membership organization, Kendler v. Rutledge, 396 N.E.2d 1309, 1312 (Ill. App. Ct. 1979)) unless a plaintiff has demonstrated that membership in the organization is an "economic necessity," Nat'l Ass'n of Sporting v. F.T.L. Mktg., 779 F.2d 1281, 1285 (7th Cir. 1985)) and that the organization's membership decision was based on bad faith or violated due process. Austin v. Am. Ass'n of Neurological Surgeons, 253 F.3d 967, 969 (7th Cir. 2001.) AAOS Defendants assert that under Pennsylvania law, a court will not interfere with the decision of a voluntary membership organization unless it violates bylaws, denies due process or is otherwise conducted in bad faith. Lodge No. 19, Svete Ime Isusovo (Lodge No. 19, Croation Fraternal Union of Am.) v. Svi Sveti (Lodge No. 1, Croation Fraternal Union of Am.), 185 A. 650, 561 (Pa. 1936). Under either state's law, AAOS Defendants argue that the Court should not interfere because Plaintiff has failed to plead "economic necessity."

Unlike Illinois law, Pennsylvania law does not require Plaintiff to plead economic necessity. Therefore, even though Illinois law may require an allegation of "economic necessity," the Complaint withstands the Motion to Dismiss if the Complaint contains facts to warrant judicial review under Pennsylvania law.

As noted above, a Pennsylvania court will review a private organization's membership decision where such decision is alleged to violate its Bylaws, due process or where proceedings were conducted in bad faith. (Doc. No. 14, Ex. 1 at 14); Lodge No. 19, 185 A. at 561. Plaintiff alleges that AAOS Defendants violated their Bylaws and Professional Compliance Program by failing to give him a "fair and equitable grievance proceeding as described in paragraphs 21-77 [of the Complaint]." (Doc. No. 1 ¶¶ 106-107.) In doing so, Plaintiff has alleged violations

sufficient to warrant judicial scrutiny under Pennsylvania law.

Accordingly, since Pennsylvania law may apply here and no allegation of economic necessity is required under Pennsylvania law, the Complaint contains facts sufficient to warrant judicial review under Pennsylvania law.

### c.  Declaration of Richard N. Peterson and Attached Documents

Before reaching the merits of AAOS Defendant's claims with regard to Counts IV, V, VI, VII and VIII, one additional matter deserves discussion.  In the Response in Opposition to AAOS Defendants' Motion to Dismiss (Doc. No. 17), Plaintiff argues that the Court should not consider the declaration of Richard N. Peterson or the attached documents.  He argues that, although the Court may consider an "undisputedly authentic document" as an exhibit to a motion to dismiss when a plaintiff's claims are based on that document, the Court should not consider this document because it introduces matters outside the Complaint.

AAOS Defendants respond by arguing that the corporate documents annexed to the Peterson Declaration form the very basis of the contractual relationship between the parties and that any matter outside the Complaint which the Declaration introduces is relevant to establishing Mr. Peterson's ability to authenticate the document.  (Doc. No. 19 at 3-4.)

AAOS Defendants attached nine Exhibits to their Motion to Dismiss (Doc. No. 14). Exhibit "A" is a copy of AAOS Defendants' Bylaws.  Exhibit "B" is a copy of their Standards of Professionalism.  Exhibit "C" is a copy of their Professional Compliance Program Grievance Procedures.  Exhibit "D" is a copy of a letter signed by Plaintiff.  Exhibit "E" is a copy of a Grievance Hearing Report.  Exhibit "F" is a copy of an Appeal Hearing Report.  Exhibit "G" is a copy of the transcript of the February 28, 2009 hearing which Plaintiff references in paragraphs

61 through 65 of the Complaint. Exhibit "H" is a copy of Plaintiff's Draft Report. Exhibit "I" is a copy of a publication of *AAOS Now*.

The Third Circuit has held "that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claim are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F2d 1192, 1196 (3d Cir. 1993). Here, AAOS Defendants' Bylaws (Doc. No. 14, Ex. A), their Compliance Program Grievance Procedures (Id. at Ex. B), and their Professional Compliance Program Grievance Procedures (Id. at Ex. C) are cited in the Complaint and in the briefs of both Plaintiff and AAOS Defendants. Plaintiff does not object to their authenticity and his claims are based on these documents. Therefore, Exhibits "A," "B" and "C" are undisputedly authentic and the Court will consider them. See Bohaychick v. United Food & Commercial Workers Intern. Union, No. 06-738, 2006 WL 3040901, at *1-2 (W.D. Pa. Oct. 26, 2005); Menkowitz v. Pottstown Mem'l Med. Ctr., No 97-2669, 1999 WL 410362, at *5 n.8 (E.D. Pa. June 21, 1999). The remaining documents are not "undisputedly authentic" in the sense that they introduce matters outside the four corners of the Complaint and contain factual findings disputed by Plaintiff. The Court will not consider these documents in deciding AAOS Defendants' Motion to Dismiss.

### 2. Count IV - Breach of Contract

To state a claim for breach of contract a plaintiff must allege (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages resulting from the breach. Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (citing CoreStates Bank,

N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Supper. Ct.1999)).[4]

In this case, Plaintiff asserts that the Bylaws, the Professional Compliance Program and the procedures governing that program constitute a contract between AAOS Defendants and their members.  (Doc. No. 1 ¶ 106.)  He argues that AAOS Defendants breached that contract by failing to afford him a fair and equitable grievance proceeding.  (Id. ¶ 107.)  He alleges that this breach ultimately lead to the Board's decision to suspend him.  (Id. ¶ 108.)

AAOS Defendants agree that the Bylaws, the Professional Compliance Program and the procedures governing that program are the contract and assert that they did not breach it.  They argue that the claim should be dismissed because Plaintiff does not allege facts to show that they failed to give him a fair and equitable grievance proceeding.  They contend the grievance proceeding was in accordance with the rules and procedures in place.

Here, AAOS Defendants' argument is based on a factual dispute.  Given that the Court must accept the facts as alleged in the Complaint as true for the purposes of the motion to dismiss, these factual disputes cannot serve as the basis for dismissal.  Phillips, 515 F.3d at 233.

---

[4] Under Illinois law, establishing a breach of contract claim requires proof on an additional element—performance by the plaintiff.  See Catania v. Local 4250/5050 of Commc'ns Workers of Am., 834 N.E.2d 966, 971 (Ill. App. Ct. 2005) (quoting Henderson-Smith & Assocs., Inc. v. Nahamani Family Serv. Ctr., Inc., 752 N.E.2d 33, 43 (Ill. App. Ct. 2001)) ("In order to establish a claim for common law breach of contract in Illinois, a plaintiff must allege and prove the following elements: '(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff.'").  Since the Court has not yet determined whether Illinois or Pennsylvania law applies, Plaintiff need only state a claim under either Pennsylvania or Illinois law.  Therefore, Plaintiff need not allege this additional element to withstand the Motion to Dismiss.

Therefore, the Court will deny AAOS Defendants' Motion to Dismiss the breach of contract claim.

### 3. Count V - Tortious Interference

AAOS Defendants also argue that the Court should dismiss the tortious interference claim because Plaintiff has not sufficiently pled the elements of this claim. According to AAOS Defendants, both Illinois and Pennsylvania law require a plaintiff to allege (1) the existence of a valid business relationship, (2) knowledge of the relationship on the part of the defendant, (3) non-privileged conduct that constitutes malicious interference for the purpose of defeating this relationship, and (4) resultant damage to the party whose relationship was disrupted. (Doc. No. 14 at 18) (citing Vickers v. Abbott Labs, 719 N.E.2d 1101, 1116 (Ill. App. Ct.) (1999); Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 471 (Pa. 1979)). AAOS Defendants argue that the Complaint lacks two elements: (1) an allegation that their conduct was non-privileged; and (2) an allegation that their actions were malicious or intended to do harm. (Id. at 18-21.)

Plaintiff argues that AAOS Defendants' conduct was non-privileged, and that even if the Court finds they had a privilege, whether their conduct violated that privilege is a question of fact which cannot be resolved at the Motion to Dismiss stage. (Doc. No. 17 at 18.)

Here, again, AAOS Defendants challenge the Complaint based on a factual dispute. Plaintiff alleges AAOS Defendants made findings which "directly contradict the information presented at the hearing" and acted "with the intent of depriving [Plaintiff] of the opportunity to serve as an expert witness," and "without privilege or justification for their action." (Doc. No. 1 ¶¶ 55, 113-115.) In doing so, he has sufficiently pled that AAOS Defendants' conduct was non-privileged and their actions intended to do harm. Therefore, the Court will deny AAOS

Defendants' Motion to Dismiss the tortious interference claim.

**4.     Count VI - Commercial Disparagement**

Plaintiff alleges that the publication of his suspension in the September 2009 issue of *AAOS Now* contained false statements about him, and was intended to cause him loss.  (Doc. No. 1 ¶¶ 118-122.)  He also asserts AAOS Defendants knew the publication was false and/or acted with reckless disregard for the truth.  (Id. ¶ 123.)  Plaintiff claims damages for loss of credibility as an expert witness, lost income and revenue for his expert services, and for embarrassment and humiliation he has undergone.  (Id. ¶ 124.)

AAOS Defendants submit that it is unclear whether commercial disparagement is recognized under Illinois law.  Under Pennsylvania law, commercial disparagement is recognized.  A plaintiff is required to plead (1) a false statement, (2) published with the intent to cause pecuniary loss of that would reasonably result in pecuniary loss, (3) pecuniary loss, and (4) that the publisher either knew that the statement was false or acts in reckless disregard of its truth or falsity.  (Doc. No. 14 at 22) (citing Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 761 A.2d 553, 555-56 (Pa. Super. Ct. 2000)).  AAOS Defendants argue that Plaintiff cannot make out a claim for commercial disparagement because the statements published in the September 2009 issue of *AAOS Now* are either true or opinion.  Further, they assert that the publication of the suspension is privileged conduct that cannot be commercial disparagement.  Finally, they argue that Plaintiff, by his membership in the organizations, agreed to the publication as set forth in the Bylaws and Professional Compliance Program.

In Response, Plaintiff contends the statements made about him in the September 2009 issue of *AAOS Now* were false and misleading because they were based on a grievance

proceeding conducted in bad faith.  Consequently, Plaintiff contests that all the statements were either true or only opinions.  Further, he maintains the publication was neither privileged nor consented to, because the Bylaws he agreed to require limited scope of publication.

> The Association bylaws require that notice of all compliance actions by the Board of Directors be sent to the state licensing board, state medical society, the American Board of Orthopaedic Surgery and, as appropriate, other medical associations. . . .  The September 2009 issue of *AAOS Now*, however, was published on the Internet and is accessible to anyone with Internet access. This worldwide publication is far beyond the scope of those persons to whom the Association bylaws require publication.

(Doc. No. 17 at 22.)  Plaintiff contends that even if the Court finds AAOS Defendants had a conditional privilege to publish outside the limits set by the Bylaws, they abused that privilege by acting with "actual malice" or negligently.  (Id. at 23.)

Here, again, AAOS Defendants attack the Complaint based on a disagreement with the factual allegations.  These factual disputes cannot serve as the basis for dismissal, Phillips, 515 F.3d at 233, and the Court will deny AAOS Defendants' Motion to Dismiss the commercial disparagement claim.[5]

### 5.    Count VII - Defamation

To state a claim for defamation a plaintiff must allege (1) the defendant made a false statement concerning the plaintiff, (2) the defendant made an unprivileged publication of this

---

[5] Illinois law may not recognize a claim for commercial disparagement.  However, the Court need not determine at this stage whether Illinois law would recognize such a claim, as it has not yet determined whether Pennsylvania or Illinois law applies.  Since Pennsylvania recognizes commercial disparagement and since Plaintiff has stated a claim for commercial disparagement under Pennsylvania law, the Motion to Dismiss Count VI will be denied.

statement to a third party, and (3) plaintiff suffered damages as a result of this publication.[6]

Taylor v. Wal-Mart Stores, Inc., No. 09-942, 2010 WL 146003, at *3 (S.D. Ill. Jan. 12, 2010)

(citing Solaia Tech., L.L.C. v. Specialty Publ'g Co., 852 N.E.2s 825, 839 (Ill. 2006)).

Here, Plaintiff asserts that the publication of his suspension in the September 2009 issue

of *AAOS Now* was defamatory. (Doc. No. 1 ¶¶ 126-127.) He alleges that the statements in the

publication clearly identified him, demeaned his credibility as an expert witness, and caused him

damages. (Id. ¶¶ 129-131.) He also asserts that the information published "was neither

warranted nor supported by the information available to [AAOS Defendants]." (Id. ¶ 128.)

AAOS Defendants agree that the allegedly defamatory statements were published and

were harmful to Plaintiff. However, they maintain that all statements of fact made about Plaintiff

were true, and therefore are per se not defamatory. They also claim they had a privilege to

publish the information.

Once again, AAOS Defendants attack the Complaint based on a disagreement with its

facts. The Complaint asserts that the published statements were "neither warranted or supported"

by facts. (Id.) At the motion to dismiss stage, the Court accepts this allegation as true and

---

[6] Under Pennsylvania law, the elements of a defamation claim are provided in 42 PA. CONS. STAT. ANN. § 8343(a). Ortiz v. Del. River Port Auth., No. 09-6062, 2010 WL 1994911, at *3 (E.D. Pa. May 17, 2010) (quoting 42 PA. CONS. STAT. ANN. § 8343(a) (West 2010)). Section 8343 provides that to state a claim for defamation a plaintiff must allege: "(1) The defamatory character of the communication; (2) Its publication by the defendant; (3) Its application to the plaintiff; (4) The understanding by the recipient of its defamatory meaning; (5) The understanding by the recipient of it as intended to be applied to the plaintiff; (6) Special harm resulting to the plaintiff from its publication; and (7) Abuse of a conditionally privileged occasion."
Since the Court has not yet determined whether Pennsylvania or Illinois law applies and since Plaintiff has stated a claim for defamation under Illinois law, the Motion to Dismiss Count VII will be denied.

AAOS Defendant's characterization to the contrary will not serve as the basis for dismissal. Phillips, 515 F.3d at 233. Therefore, the Court will deny AAOS Defendants' Motion to Dismiss the defamation claim.

### 6. Count VIII - False Light Invasion of Privacy

To state a claim for false light invasion of privacy a plaintiff must allege that (1) he was publicly placed in a false light as a result of the defendant's actions, (2) the false light in which he was placed would be highly offensive to a reasonable person, and (3) the defendant acted with actual knowledge of or in reckless disregard to the falsity of the publicized information. Choi v. Sohn, No. 01-1782, 2004 WL 627060, at *4 (E.D. Pa. Mar. 1, 2004) (quoting Curran v. Children's Serv. Ctr. of Wyoming County, Inc., 578 A .2d 8, 12 (Pa. Super. Ct. 1990)); Raveling v. HarperCollins Publishers Inc., No. 04-2963, 2005 WL 900232, at *3 (7th Cir. Mar. 4, 2005) (citing Kolegas v. Heftel Broad. Corp., 607 N.E.2d 201, 209 (Ill.1992)).

In the instant case, Plaintiff maintains that the publication of his suspension in the September 2009 issue of *AAOS Now* invaded his privacy by conveying the impression that he was unprofessional and that he rendered a false expert opinion. (Doc. No. 1 ¶ 134.) He argues that this publication would be highly offensive to a reasonable person. (Id.) In addition, he alleges that AAOS Defendants had knowledge of or acted in reckless disregard of the falsity of the publication. (Id. ¶ 135.)

AAOS Defendants assert that the Court should dismiss the false light invasion of privacy claim because the statements about Plaintiff published in the September 2009 issue of *AAOS Now* were true. Further, they argue that Plaintiff consented to the publication and for this reason he cannot allege an invasion of privacy claim.

23

Here again, AAOS Defendants challenge the truth of the information published. A factual dispute cannot serve as a basis for a motion to dismiss. Phillips, 515 F.3d at 233. The Court will deny AAOS Defendants' Motion to Dismiss the false light invasion of privacy claim.

**V.      CONCLUSION**

For the foregoing reasons, the Court will deny Colleran Defendants' Motion to Dismiss Counts I, II and III of the Complaint, and will deny AAOS Defendants' Motion to Dismiss Counts IV, V, VI, VII, and VIII.

An appropriate Order follows.